IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GLENN MIZUKAMI, | ) | CIVIL NO. 13-00586 SOM/RLP |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERICAN HOME MORTGAGE SERVICING INC.; HOMEWARD RESIDENTIAL; RCO HAWAII LLLC; OCWEN LOAN SERVICING LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DISMISSING COMPLAINT**

**I.      INTRODUCTION.**

On November 1, 2013, Plaintiff Glenn Mizukami filed the Complaint in this action.  Mizukami names as Defendants 1) his former mortgage servicer, Homeward Residential, Inc. (fka American Home Mortgage Servicing, Inc.), 2) his current loan servicer, Ocwen Loan Servicing, LLC, and 3) the law firm that initiated foreclosure proceedings against him, RCO Hawaii, LLLC. Mizukami asserts various claims arising out of his attempt to modify his mortgage loan and the foreclosure of that loan. Because the Complaint fails to allege viable claims, the court grants the motions to dismiss filed by Defendants and dismisses the Complaint without a hearing pursuant to Local Rule 7.2(d). Mizukami is given leave to file an Amended Complaint no later than February 7, 2014.  Failure to file an Amended Complaint by

that date will result in the automatic dismissal of this action. The court denies as moot Mizukami's motion for summary judgment and motion for leave to "addend" Complaint.

**II.     BACKGROUND FACTS.**

Mizukami's Complaint does not clearly allege the facts underlying his claims. The court has gleaned the following background facts from the documents attached to the Complaint.

On or about August 23, 2001, Mizukami executed an Adjustable Rate Note for $228,000.00 in favor of Ameriquest Mortgage Company. See ECF No. 1-3, PageID # 12. It is undisputed that this note was secured by a mortgage that was recorded in the State of Hawaii Bureau of Conveyances as Document No. 2001-157812. See ECF No. 18-3, PageID # 198. It is also undisputed that, in 2009, the beneficial ownership of the loan was conveyed to Deutsche Bank National Trust Company, as trustee for Ameriquest Mortgage Securities Inc. Asset-Backed Pass-Through Certificates, Series 2001-2, Under the Pooling and Servicing Agreement Dated September 1, 2001. See ECF No. 18-4, PageID # 217.

It appears that Mizukami had trouble making his mortgage loan payments. On or about February 6, 2012, the loan servicer for Mizukami's mortgage loan, American Home Mortgage Servicing, Inc., sent Mizukami a letter that stated, "As your mortgage servicer, we want to help you to stay in your home. We

want you to know that there is a program available that may help you.  If you qualify under the federal government's Home Affordable Modification (HAMP) program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure."  ECF No. 1-6, PageID # 23.  That letter also stated, "During a HAMP evaluation we will not refer your home to foreclosure.  If your loan already has been referred to foreclosure, we will continue the process while we evaluate your loan for HAMP."  ECF No. 1-6, PageID # 24.

Paragraph 12 of the Complaint alleges that Mizukami accepted the February 6, 2012, "offer of HAMP relief," although no detail is included in Mizukami's factual allegations and no documents supporting this statement are attached to the Complaint.  The documents attached to the Complaint actually indicate otherwise, as discussed below.

In February 2012, American Home Mortgage Servicing, Inc., announced that it was changing its name to Homeward Residential.  See ECF No. 1-4, PageID # 15.

Apparently, American Home Mortgage Servicing, Inc., issued a "Notice of Intent to Foreclose" on or about March 27, 2012.  See ECF No. 1-8, PageID # 31 (letter to Mizukami mentioning the "Notice of Intent to Foreclose" while informing him that his partial payment was being returned.).

On or about June 24, 2012, RCO Hawaii, LLLC, sent Mizukami a Fair Debt Collection Practices Act ("FDCPA") letter, informing him that RCO Hawaii had been retained to initiate foreclosure proceedings and providing various notices required by the FDCPA.  See ECF No. 1-9, PageID # 43.

It appears that, in August 2012, Mizukami submitted a request for mortgage assistance under HAMP.  See ECF No. 1-10, PageID #s 48-50.

On or about October 15, 2012, Homeward Residential sent Mizukami a letter, acknowledging receipt of his request for mortgage assistance under HAMP, but noting that all of the required documents had not been submitted.  See ECF No. 1-10, PageID # 56.

On or about November 30, 2012, Mizukami faxed another request for mortgage assistance under HAMP.  See ECF No. 1-11, PageID # 61.

On or about December 4, 2012, Homeward Residential sent Mizukami a letter that declined to offer him a HAMP loan modification, stating that Homeward had not received all of the required verification documents.  See ECF No. 1-11, PageID # 63.

Effective March 16, 2013, Homeward Residential transferred the servicing of Mizukami's loan to Ocwen Loan Servicing, LLC.  See ECF No. 1-5, PageId # 16.

### III.        RULE 12(b)(6) STANDARD.

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient

to defeat a motion to dismiss.  <u>Sprewell</u>, 266 F.3d at 988; <u>Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell</u>, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); <u>accord</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

**IV.     ANALYSIS.**

Many of Mizukami's filings are unintelligible.  For example, in a filing of December 26, 2013, Mizukami writes, "Whereby, on RCO sole-volition & expert-stratagem on LR 7.4 after MIO filed, only that Reply could legally be taken Opposition to MSJ, and as One-and-the same support of MTD otherwise defaulted-without-merit." See ECF No. 34, PageID # 278.  Should Mizukami continue to proceed in this matter pro se, which is his right, the court encourages him to write in simple sentences, rather than using language he thinks lawyers use.  It would be far better to have simple sentences that this court can understand than the "legalese" submitted by Mizukami.

Turning to the allegations of the Complaint, the court determines that they are insufficient to state a claim, as the facts alleged do not support the claims made.  Moreover, the

court and Defendants cannot tell which claims are being asserted against which Defendants.

### A. First Cause of Action--Promissory Estoppel.

The First Cause of Action asserts a claim of promissory estoppel. There are four elements to a claim of promissory estoppel under Hawaii law:

> (1) There must be a promise;
> (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);
> (3) The promisee does in fact rely upon the promisor's promise; and
> (4) Enforcement of the promise is necessary to avoid injustice.

Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Haw. 149, 164-65, 58 P.3d 1196, 1211, 1212 (2002).

Paragraph 21 of the Complaint alleges that Defendants promised not to refer Mizukami's loan for foreclosure during the HAMP process. But it is unclear which Defendant made such a promise. In one of the documents attached to the Complaint, American Home Mortgage Servicing, Inc., sent Mizukami a letter dated February 6, 2012. In that letter, American Home Mortgage Servicing, Inc., told Mizukami, "As your mortgage servicer, we want to help you to stay in your home. We want you to know that there is a program available that may help you. If you qualify under the federal government's Home Affordable Modification (HAMP) program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your

8

mortgage loan and you can avoid foreclosure." ECF No. 1-6, PageID # 23. That letter also stated, "During a HAMP evaluation we will not refer your home to foreclosure. If your loan already has been referred to foreclosure, we will continue the process while we evaluate your loan for HAMP." ECF No. 1-6, PageID # 24.

Given the letter of February 6, 2012, the promissory estoppel claim appears to be asserted against American Home Mortgage Servicing, Inc. But it does not appear from the record that American Home Mortgage Servicing, Inc., breached a promise not to refer the mortgage to the foreclosure process while Mizukami was going through the HAMP loan modification process. It appears that, in August 2012, Mizukami submitted a request for mortgage assistance under HAMP. See ECF No. 1-10, PageID #s 48-50. This was several months after the loan had been referred to the foreclosure process. American Home Mortgage had apparently issued a "Notice of Intent to Foreclose" on or about March 27, 2012. See ECF No. 1-8, PageID # 31 (letter to Mizukami mentioning the "Notice of Intent to Foreclose" while informing him that his partial payment was being returned). And, on or about June 24, 2012, RCO Hawaii, LLLC, sent Mizukami a Fair Debt Collection Practices Act ("FDCPA") letter, informing him that RCO Hawaii had been retained to initiate foreclosure proceedings and providing various notices required by the FDCPA. See ECF No. 1-9, PageID # 43.

The letter of February 6, 2012, did not require the foreclosure process to stop if Mizukami requested a HAMP loan modification after it had begun.  To the contrary, it stated, "If your loan already has been referred to foreclosure, we will continue the process while we evaluate your loan for HAMP."  ECF No. 1-6, PageID # 24.

Because Mizukami fails to allege facts supporting a promissory estoppel claim, that claim is dismissed with leave to amend, as discussed below.

> **B.    Second Cause of Action--Breach of Good Faith and Fair Dealing**.

The Complaint's Second Cause of Action asserts a claim of breach of good faith and fair dealing.  It is not entirely clear what facts this claim is based on, although its reference to "Deceitful Actions" may be a reference to actions allegedly taken to foreclose while the HAMP process was ongoing--the facts underlying the First Cause of Action.

The obligation to deal in good faith is a well-established principle in Hawaii contract law.  See Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 124, 920 P.2d 334, 338 (1996) (citing Restatement (Second) of Contracts § 205 (1979) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.")).  The Intermediate Court of Appeals for the State of Hawaii has expressly noted that parties have a duty of good faith and fair

dealing in performing contractual obligations; such good faith "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Hawaii Leasing v. Klein, 5 Haw. App. 450, 456, 698 P.2d 309, 313 (App. 1985) (citing Restatement (Second) of Contracts § 205, cmt. a). "Thus, a party who evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, may be liable for breach of the implied covenant of good faith and fair dealing." 23 Williston on Contracts § 63:22 (4th ed.) (quotation marks, alterations, and citation omitted); see also Restatement (Second) of Contracts § 205, cmt d ("A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.").

This court has noted that a breach of the implied covenant of good faith and fair dealing is a claim in the nature of assumpsit. See Skanning v. Sorenson, 2009 WL 5449149, *6 n.4 (D. Haw. Dec. 10, 2009).  In most breach of contract actions in Hawaii, tort damages are not available.  See Francis v. Lee Enterprises, Inc., 89 Haw. 234, 971 P.2d 707 (1999) (determining

that Hawaii law does not recognize a cause of action for tortious breach of an employment contract). In <u>Francis</u>, the Hawaii Supreme Court determined that Hawaii law does not allow tort damages "in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." <u>Id.</u> at 235, 971 P.2d at 708. Instead, contract-based damages are "limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at the time; consequential damages beyond the expectations of the parties are not recoverable." <u>Id.</u> at 239-40, 971 P.2d at 712-13 (quotation marks and citation omitted). "Thus, damages for emotional distress and mental suffering, as well as punitive damages, are generally *not* recoverable in contract." <u>Id.</u> at 240, 971 P.2d at 713. The Hawaii Supreme Court recognized two exceptions--when emotional distress arising out of a contract is accompanied by a bodily injury (e.g., in a medical malpractice context) or when the nature of a contract makes serious emotional disturbance particularly foreseeable (e.g., with a promise to marry or to prepare a body for burial). <u>Id.</u>

Although Hawaii law generally does not recognize a tortious breach of contract claim, the Hawaii Supreme Court has recognized the tort of bad faith in the first- and third-party insurance context. <u>See</u> <u>Best Place</u>, 82 Haw. at 132, 920 P.2d at

346 ("we hold that there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action"). The court grounded that decision in the "atypical" relationship between the insurer and the insured, stating:

> Adopting the tort of bad faith is consistent with the case law and statutory provisions dealing with insurer misconduct in this jurisdiction.  In addition, the special relationship between insurer and insured is . . . atypical, and the adhesionary aspects of an insurance contract further justify the availability of a tort recovery.  Finally, a bad faith cause of action in tort will provide the necessary compensation to the insured for all damage suffered as a result of insurer misconduct.  Without the threat of a tort action, insurance companies have little incentive to promptly pay proceeds rightfully due to their insureds, as they stand to lose very little by delaying payment.

Id.

This case does not involve any of the exceptions allowing tort damages for a breach of the duty of good faith and fair dealing.  To the extent the Second Cause of Action seeks damages under contract law, the Complaint fails to allege facts demonstrating any breach of contract.  Failing to even identify the contract, the Second Claim for Relief fails to state a claim on which relief can be granted.  The Second Claim for Relief is therefore dismissed with leave to amend, as set forth below.

## C. Third Cause of Action--FDCPA.

The Third Cause of Action asserts violations of the FDCPA. This claim appears to arise out of RCO Hawaii's letter of June 24, 2012, which informed Mizukami that RCO Hawaii had been retained to initiate foreclosure proceedings and provided him with various notices required by the FDCPA. See ECF No. 1-9, PageID # 43. But the Complaint does not allege facts demonstrating any FDCPA violation.

At most, the Complaint refers to violations of 15 U.S.C. § 1692d(5) (telephone harassment), §§ 1692e(5) and (13) (threats to take legal action that cannot be taken and false representation that documents are legal process), § 1692(g) (validation of debts), § 1692(i) (legal actions by debt collectors), and § 1692k (civil liability). However, because facts are not alleged that support such violations, the Third Cause of Action is dismissed with leave to amend, as set forth below.

## D. Fourth Cause of Action--Unjust Enrichment.

The Fourth Cause of Action asserts unjust enrichment, which requires "that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." Durette v. Aloha Plastic Recycling, Inc., 105 Haw. 490, 504, 100 P.3d 60, 74 (2004). It is not at all clear from the factual allegations in the Complaint how

14

Mizukami conferred a benefit on any Defendant such that the retention of that benefit would be unjust.  Paragraph 25 of the Complaint does allege that Defendants lulled Mizukami into submitting multiple HAMP loan modification applications, but the Complaint fails to identify any benefit that any Defendant unjustly kept as a result.  For that reason, the Fourth Cause of Action fails to assert a claim on which relief can be granted.  The Fourth Cause of Action is dismissed with leave to amend, as set forth below.

>   **E.    Fifth Cause of Action--Intimidation and Malicious Threats**.

The Fifth Cause of Action appears to assert violations of the Restatement (Second) of Contracts § 176, which states:

> (1) A threat is improper if
>
>   (a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property,
>
>   (b) what is threatened is a criminal prosecution,
>
>   (c) what is threatened is the use of civil process and the threat is made in bad faith, or
>
>   (d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient.
>
> (2) A threat is improper if the resulting exchange is not on fair terms, and

>     (a) the threatened act would harm the
> recipient and would not significantly benefit
> the party making the threat,
>
>     (b) the effectiveness of the threat in
> inducing the manifestation of assent is
> significantly increased by prior unfair
> dealing by the party making the threat, or
>
>     (c) what is threatened is otherwise a
> use of power for illegitimate ends.

The Complaint, however, does not identify which Defendant made what threat. At best, Paragraph 28 alleges that Mizukami was told that, if he did not make payments to reinstate the loan, foreclosure proceedings would be initiated. It is not at all clear how this statement would violate section 176.

Paragraph 29 of the Complaint alleges that Defendants posted dozens of default notices on his door. However, Mizukami does not describe how these notices violated section 176, or any other statute or regulation.

Because the Fifth Cause of Action fails to allege facts that support an identified violation, it fails to assert a claim on which relief can be granted. Accordingly, it is dismissed with leave to amend, as set forth below.

## F.   Sixth Cause of Action--Intentional Infliction of Emotional Distress.

The Sixth Cause of Action asserts Intentional Infliction of Emotional Distress. The elements of the tort of intentional infliction of emotional distress ("IIED") are: 1) the conduct allegedly causing the harm was intentional or reckless;

2) the conduct was outrageous; 3) causation; and 4) extreme emotional distress to another.  See Hac v. Univ. of Hawaii, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).

Mizukami does not identify which Defendant allegedly committed the acts that intentionally caused him emotional distress.  Nor are the allegations clear about how any Defendant's conduct was outrageous.  Because the Complaint lacks any factual detail supporting a claim of IIED, that claim is dismissed with leave to amend, as set forth below.

### G.   Mizukami is Given Leave to File a First Amended Complaint.

Because it may be possible for Mizukami to allege facts supporting viable claims, he is given leave to file an Amended Complaint no later than February 7, 2014.  If Mizukami fails to timely amend the Complaint, the Clerk of Court is directed to automatically terminate this action without further order of this court.

Any Amended Complaint should include "a short and plain statement of the claim showing that [Mizukami] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that the Amended Complaint should clearly allege the facts supporting the causes of action asserted.  Mizukami should avoid trying to use "legalese," and should instead write in simple sentences. Mizukami should ask himself, with respect to each sentence,

17

"Could a person unfamiliar with this case easily understand what I am saying?"

For each cause or action or count asserted, Mizukami should identify the legal and factual bases for the claim so that each Defendant will be put on fair notice of the nature of the claim and of the relief being sought.  See Twombly, 550 U.S. at 555.  Any Amended Complaint should also clearly identify the Defendant(s) in any particular claim and describe the facts supporting the claim.  This means that each claim should clearly identify which Defendant is being named in that claim and why.

Any Amended Complaint must be a complete document itself; that is, it must not incorporate the original Complaint by reference.

### H. Mizukami's Motions, ECF Nos. 10 and 12, are Denied as Moot.

Because the court dismisses the Complaint with leave to amend, the court denies Mizukami's motion for summary judgment and motion to "addend" Complaint as moot.

**V.      CONCLUSION.**

The court dismisses Mizukami's Complaint for failure to state any claim on which relief can be granted.  Mizukami is given leave to file an Amended Complaint no later than February 7, 2014.

Mizukami's motions, ECF Nos. 10 and 12, are denied as moot.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 16, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Mizukami v. American Home Mortgage Servicing Inc., Civil No. 13-00586 SOM/RLP; ORDER DISMISSING COMPLAINT